Good morning, Your Honors. May it please the Court? Just one other thing. I'm sorry. Judge Christian and I would like to welcome and thank Judge Friedenthal, who's sitting with us from the District of Wyoming. Welcome and thank you, Judge Friedenthal. Good morning, Your Honor. You're welcome, too. May it please the Court. My name is Michael Soko. I represent Ms. Tovar in this matter. I'd like to reserve three minutes for rebuttal. All right. Please be informed that the time shown on the clock is your So, in this case, the petitioner is a Mexican national who fled Mexico after suffering years of repeated abuse from her brother. That abuse was sexual, physical, emotional, and psychological. She attempted, in fact, her brother attempted to kill her on multiple occasions and attempted to rape her as well. She has a really compelling story, counsel. Why is she a refugee? Because she, to be a refugee, she needs to show that she's unable and unwilling to return to her country and meet the standards, for example, under past persecution, that she suffered persecution. She's a member of a cognizable particular social group, was harmed as a central reason based on that social group. Okay, so that's the part from my notes, if you can focus, because you don't have a whole lot of time, but it's the persecution on So, the board does not really go into any analysis in that, aside from saying that they agree that there was no clear error on the immigration judge's part, and then they noticed that personal retribution is not a valid basis for asylum. However, in the immigration judge's decision, he only notes, specifically, as dispositive, that apparently the brother suffers from psychological disturbances. Well, even if that is a factor to be considered, under the standard, it has to be a central reason. And what's the protected ground? That's, I guess, that's what I'm struggling with. What is the protected ground that anchors the refugee status? So, it would be her familial relationship to her brother, so being his sister. One of the positive groups was sisters of Sergio Chovar, and in this situation, had it not been for that family relationship, the abuse would not have happened. Throughout her testimony, she I guess I think we've read your brief thoroughly, but again, this is the weak part of things. Of course. And so, sometimes if somebody's a family member of an individual who may be politically persecuted, and they can show that the government wouldn't, you know, protect them, then that can qualify. But here, I don't see any, you know, political connection or notoriety that would make this family a target. Is there something like that that I'm missing? So, the issue would be, what was the motive of the persecutor? And so, the persecutor, being her brother, was targeting her because she was his sister. He mentioned multiple times that, you know, she's a whore, none of the other siblings, the other sisters are. That would make a refugee, anybody who's a crime victim, at the hands of a family member. No, no, no. So, the reason why he was there's no evidence in the record that he targeted anyone else for any other reason. He mentioned, specifically, she was a whore. He did not respect her. He said, specifically, that his other sisters did not meet that standard. So, that means that, to follow up on what Judge Christian observed, that means that any time one family member is targeted by another family member, that would be grounds for asylum? I think that would be the case if that was the motive of the persecutor. Not because someone is targeted for a reason or a factor, but in this case, it was a central reason, because had it not been for her being his sister, he would not have had this animus towards her. I get that, but do you have a case that you can cite to us where asylum has been granted on the basis of one family member attacking a different family member? I don't, Your Honor, but I do know in Farouk, the court held that whether the violence is issued by or is done by a family member or a stranger, a third party, it doesn't matter. It does not negate the actual... If it's done for a political reason. For instance, if two family members were members of different political parties and one attacked the other because of the political beliefs, I think that would be closer to what you're arguing, but I'm just adrift in terms of finding some precedent that allows for inter-family violence or intra-family violence. So under the one central reason standard, it's always been noted that there's not a sole reason. There could be various central reasons. But there's got to be one qualifying reason, counsel, and that's what we're struggling with. Yes. Again, the only thing I can mention is that had it not been for that relationship, which he made clear to her, he would not have targeted her. For example, he targeted... So could I ask maybe this way, what is in the record that tells us that had she reported this to the police and followed through with the police, that she would not have been protected? Okay, so moving to the unwilling and unable to protect. Right, so sometimes that is triggered because the family is notorious or politically powerful or getting back to Judge Rollinson's point. Is there something like that here where the record shows that your client could not have been protected by the local government? So as this court held recently in... Well, regarding specifically the local government... Well, I didn't mean to limit it to local government, just... So there's ample country condition reports in the record, actually, that talk specifically about the pervasive issue of domestic violence and the lack of police action, their impunity... Is your social group a victim of domestic violence? No, that would be a circular particular social group. She was a victim of this person's, her brother's, violence due to her relationship as his sister. That was the underlying motive. Didn't the police respond at least once? So they did come, but as she noted, she did not follow through with the report because, one, her father pleaded with her not to do it, and throughout her testimony she talks about the importance of family. The other point that she makes is she felt shame throughout her, even when her sister, who had viewed some of the incidents, wanted to tell the other siblings what had happened. She said no, specifically because she was shameful, and she even didn't want to talk about herself, like much about the incidents herself, out of shame. So while the police may have come, that does not necessarily prove that action would have taken. The standard also would be unwilling and, or, I'm sorry, unwilling or unable. While they might have been responding that day, the country conditions report showed that it's clearly a very minor offense. In one of the conditions reports, it notes that domestic violence is only considered a significant offense if there are injuries that will last more than 15 days. If it's not more than 15 days, it's just considered a minor offense, and those incidences, usually the arrestee is released within hours or days. Another one of the condition reports note that the victims oftentimes have to serve the abusers with notice that they've made this complaint, thereby notifying their exact abusers of what's happening and putting them at further risk, which would show at least that it's, if not futile, that it would subject them to further harm. But that's my time, so I reserve the rest for Rebecca. All right. Thank you, counsel. Thank you. We'll hear from the government. May it please the court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. In this case, there are three issues before the court, but I'll focus on the nexus issue since that's where we spent the bulk of the time with petitioner's argument. In this case, the board found no clear error in the judge's determination that the motive here was that Ms. Tovar's brother Sergio had psychological disturbances exacerbated by his drug addiction, his alcoholism, and the board, again, found no clear error and agreed that that was not sufficient. The drug and alcohol addiction combined with his psychological disturbances was not sufficient to draw a nexus between the harm and a protected ground. Now, the testimony itself and the words of Ms. Tovar support that determination, and Ms. Tovar must show that the evidence compels the contrary result. Here we have testimony at least twice that Ms. Tovar said that he, she believes he abused her or mistreated her because he's a drug addict and an addict. In her application, her asylum application on page 158 of the record, she said, I believe the harm and mistreatment has occurred because of his alcohol and drug problem. She said this again in her statement that she filed with her asylum application, and many times during the testimony she was asked  So, the motive, even in the words of Ms. Tovar, was that he was a disturbed person and he had these alcohol and drug problems that started when he was 18 years old, and that's when the abuse, the verbal abuse and physical abuse, started according to Ms. Tovar, and even on page 7 of the opening brief, Petitioner concedes that the actual physical and verbal abuse started after he began abusing drugs and alcohol. Counsel, what significance, if any, should we apply to the intervening case of Barajas-Romero, I believe it is? Yes. It's clear that both the IJ and the BIA applied the wrong standard in the withholding claim. Yes. Is that just harmless error for, and why shouldn't we remand it back? Absolutely, Your Honor. We filed a 28-J letter on this point. The Barajas-Romero decision came out, obviously, after the board and IJ's decision in this case, and what we're arguing is that remand is not necessary because, in this case, there was no connection between the harm and a protected ground. Isn't the . . . Oh, go ahead. Apart from, just to dissect it if I could, there's the question of a quantum of nexus, and then there's nexus to the social group, the protected social group, and the problem I've got to just differentiate is the social group. I only hear opposing counsel talking about a familial connection, that she's being . . . the on account of is on account of not a political connection or a political belief, but she's his sister. Okay. Petitioner, before the agency advanced, and I believe it's in the briefs as well, three proposed social groups, family members of the Tovar family, sisters of Sergio Tovar Vasquez, and Mexican women who have abusive siblings was the third group. If we just take a step back, Ms. Tovar was the only person ever to have suffered any harm from Sergio. There's no indication from Ms. Tovar or from any evidence in the record that he was motivated to harm her because she was a member of any group whatsoever. We know he never harmed any of his other family members. We know he never harmed any of his other sisters, which there are seven, seven other sisters, and three brothers. Is it significant, though, that she was the only sister, as I understand the record, with a boyfriend? Well, there's actually . . . there is an instance where he . . . she said that she had a boyfriend and that he made these verbal abusive comments, but there's also . . . I mean, petitioners argue that she was the only single sister, but that's actually not true. If you look at page 121 of the record, Ms. Tovar testified that there was another sister living at the house with her and her brother for a period of time while the other sisters were married. This occurred over an 18-year period. She's in her 40s now. She came to the United States at age 22 or 23. So, at some time, there was another sister living in the house. It's unclear as to how long, but the point is that he has to have been motivated by her membership in a particular social group. He was motivated to harm her, there's no doubt. The behavior is abhorrent. He obviously had some inexplicable and long-standing problem with his sister, but was he motivated to do it because she was a member of any group? She . . . he certainly wasn't motivated to harm her because she was the member of her family, because he never directed any ire at any other members of the family or any other sisters. If this were . . . if group membership were the motivation behind his abuse, you would expect to see some other evidence that he showed some animosity towards that group. Here we have a situation, a very unfortunate situation, of personal retribution, which is not sufficient to show the nexus on account of a . . . Is your argument a failure on nexus or a failure to show membership in a particular social group? It's nexus. The board did not specifically address the particular social groups themselves. But the IJ did. Yes. The IJ specifically found that she had failed to establish membership. That's true, but the board decided these . . . the asylum and withholding claims on the dispositive issue of nexus alone. So, we're only looking at that issue here before this court in terms of asylum and withholding. The point, again, is that she has to show before this court that the record evidence compels a contrary result to the agency's result. And the evidence actually . . . Unless she hasn't shown a prima facie case. Right. So, if we find that the board applied the wrong nexus standard, but she has not even put on the board a prima facie case so that remand would be futile, I hesitate to remand. Right. And that's what . . . Well, that's what several of . . . that's what . . . I mean, we would argue that remand is unnecessary because it would be futile. Because under both the one reason . . . the one central reason and an A reason standard, she would not be able to show that this harm occurred on account of a protected ground, in this case membership in any of these three proposed social groups. But this court has issued several unpublished decisions where they . . . the court has said exactly that, that remand isn't necessary because it would be futile because that there has been no reason . . . no . . . the harm has not occurred on account of any reason that connects it to a social group. The difficulty, and since you're not going to have a chance to get back up again is when opposing counsel gets up, he will surely remind us that we're only reviewing . . . I mean, we have black letter law and that we review on the basis that the board relied. Right. And so, what you've done, I think, is framed your nexus argument so that it . . . Well, there's no reason. I mean, there's . . . Right. But you're saying that the board relied on nexus, you framed your argument to rely on nexus, and the reason you've done that is not a concession that there was a protected social group. The reason you've done that is because the board relied on nexus. And we have cases saying we review what the board relied upon. That's correct. Okay. Thank you. Right. With regard to . . . just because I don't have much more time, I just wanted to touch on the Convention Against Torture claim. And under that claim, the board denied relief because it said she hadn't shown that the Mexican government would acquiesce or turn a willful blind eye to her torture, and also that she could reasonably relocate. We do acknowledge that Sergio made threats and said that he would find her or that he would be able to get out of police custody. Things that he said in a drunken, drug-induced rage to her during one of these instances. But there . . . even Ms. Tovar herself said that she didn't know to what extent it was true that her brother had any contacts with anyone. And also, again, taking a step back, Ms. Tovar didn't report this abuse to anyone for years and years and years, except her parents who were in the house with her. They saw that this had occurred. But it wasn't until she called the police at the very end in February of 2011. They responded to her, they came out to take a police report, and then she declined to press charges. The government in this case showed they were willing to take action. And that evidence should trump the generalized country conditions evidence, which shows, yes, Mexico does have a problem in taking down victims of domestic violence, don't want to come forward. But in this case, she did come forward, and they responded. And it was her choice not to go forward. Also, she's got an extensive network of family, seven sisters, two brothers, nieces and nephews. She's college-educated. She went to cosmetology school as well, and she's in her 40s. So just drawing the difference between other cases and showing that the evidence doesn't compel the conclusion that she couldn't relocate and that the government wouldn't protect her. I'm almost out of time. You're over your time. Thank you, counsel. Yes, thank you. Rebuttal. Thank you, Your Honor. To address a couple of the points that opposing counsel mentioned, specifically regarding that she was the only sister harmed, while I think that that is a factor to be taken into account, I don't think it's dispositive in any way. There's an analogous situation to be if a particular religion was persecuted in the country. There's no requirement that all people of that religion are persecuted for that to be considered a significant or a sufficient factor to be a particular social group. In fact- So you're advocating a particular social group of one? No, it's the sisters of that family. So it would be a total of eight, seven including her. But how do we get there if she's the only one that was persecuted? Because the persecutor's motive was to harm her due to that it was his sister who in his mind is a whore. He specifically had mentioned the other sisters are not whores. It is only him. The psychological disturbances, while that also might have played a factor, it does not take away from the one central reason being his sister. Had it been psychological disturbances that made him violent, for example, in the incident where he was strangling her and four people were needed to take him off of her, he would have targeted anybody that was at that event. But it was an entire family event and he singled out Ms. Tovar. Throughout all of these years, he never once singled anybody out. It was always her. It was always because she was his sister and it was a whore. Is it significant that he consistently disclaimed that she was his sister? In terms of saying that she was not his sister? Yes. Well, when she in her testimony says, why do you say I'm not your sister? He says, because I don't respect you, because I don't love you. So he's not saying there's not that biological relationship. It's more because he thinks as a whore and as a sister, she's not worthy of being family. But throughout her testimony, it's clear that had it not been for her being a whore and as his sister, there would have been no problems. There's no evidence to say, and she even mentions that there was no harm to any other person. So any other person that might have met his reasoning for being a whore was not a family member and so was not subject to any harm. But burning his sister made that a personal connection to him and what made it a target for his abuse. Apologize. I'm almost out of time. But I would notice, as you also mentioned, for withholding purposes, there's only regard that it's a reason, not a central reason. And so even if it's not found to be a central reason for asylum purposes, we would say that her familial relationship does show that it was a reason and it does require separate analysis. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. The next case on calendar for argument is Murphy versus Anderson.
judges: Rawlinson, Christen, Freudenthal